**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| KAPTAN DEMIR CELIK ENDUSTRISI VE TICARET A.S., | ) ) ) |
| Plaintiff, | ) ) |
| and | ) ) |
| COLAKOGLU DIS TICARET A.S., *et al.,* | ) ) |
| Plaintiffs-Intervenors, | ) ) |
| v. | ) ) Court No. 21-00565 |
| UNITED STATES, | ) ) |
| Defendant, | ) ) |
| and | ) ) |
| REBAR TRADE ACTION COALITION, *et al.*, | ) ) ) |
| Defendant-Intervenor. | ) ) |

## **DEFENDANT'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL FILING**

Defendant, the United States, respectfully submits this response to the supplemental

filing, titled as a "Notice of Supplemental Authority," filed by Plaintiff Kaptan Demir Celik

Endustrisi Ve Ticaret A.S. (Kaptan) (Kaptan Notice) (ECF No. 62) concerning the Department

of Commerce's (Commerce) recently filed Final Results of Redetermination Pursuant to Court

Remand (Nucor Remand) (No. 21-00182, ECF No. 61) in *Nucor Corporation v. United States*,

600 F. Supp. 3d 1225, 1239 (Ct. Int'l Trade 2022).   At the outset, the Nucor Remand has not

been sustained by this court and, even if it were to be sustained, this Court is not bound by the

judgments of other trial court judges.  *See Algoma Steel Corp. v. United States*, 865 F.2d 240, 243 (Fed. Cir. 1989).

As Commerce has explained, its analysis concerning primarily dedicated inputs and cross-owned input suppliers focuses on the production processes of a ***particular*** company or companies.  *See Steel Concrete Reinforcing Bar from the Republic of Turkey*, 86 Fed. Reg. 53,279 (Dep't of Commerce Sept. 27, 2021) (final results) (P.R. 288), and accompanying Issues and Decision Memorandum (P.R. 283) (IDM) at 26; Govt Br. at 10 (ECF No. 41).  As a result of the nuanced and fact-specific nature of this analysis, Commerce reviews the facts of each record on a case-by-case basis, and each decision is highly record-dependent.  *Id.*  The facts at issue in *Nucor*, which concerned Commerce's determination in the 2018 administrative review of CTL Plate from Korea, are in many ways different from the facts before the Court here.  Without resort to information regarding the business proprietary inputs and production processes on the record of *Nucor*, multiple distinguishing factors still exist.

The Court, in its remand order in *Nucor*, held that Commerce had failed to "go beyond simply identifying one set of prior decisions in support of its determination."  *Nucor*, 600 F. Supp. 3d at 1239.  Thus, Commerce's analysis of the various, non-exhaustive factors set forth in the Nucor Remand was undertaken in response to specific instructions to further explain the rationale behind Commerce's determination.  *See Nucor* at 1239.  Commerce is not required to have relied on an identical analysis in the underlying determination for the Court to find the decision was supported by substantial evidence.  Here, Commerce articulated a reasoned explanation for its decision and rationally explained the connection between the record facts and its decision in the underlying determination.

In the underlying determination Commerce found there was a vertically integrated scrap supply process and that Nur's scrap inputs were used exclusively for Kaptan's overall production of downstream steel products including subject merchandise. Govt Br. at 16-17; IDM at 26. Thus, as Commerce explained, "{i}n this review . . . whether or not Nur manufacturers scrap as its primary business or any other steel product matters little for purposes of our analysis of Nur's status as an input supplier to Kaptan." IDM at 25-26. As explained in the Nucor Remand, in that proceeding there was no indication that the scrap sold by the supplier, POSCO Plantec, was devoted exclusively for respondent POSCO's downstream steel production, nor was there evidence of a vertically integrated supply chain or that the scrap was used exclusively by the downstream producer in its production of downstream product. Nucor Remand at 29-30, 62-63. Indeed, Commerce used the underlying proceeding as an example where Commerce may come to a different decision regarding scrap due to a difference in record evidence. *See* Nucor Remand at 29-30; 62-63.

Kaptan attempts to reduce Commerce's analysis to that of "a single factor": Nur's exclusive sale of scrap to Kaptan. *See* Kaptan Notice at 3. This mischaracterization cannot stand; as explained above and in our brief, Commerce found multiple factors supporting its finding that Nur's scrap was primarily dedicated. Govt Br. at 16-17; IDM at 26-27.

Kaptan also argues that Commerce's analysis of POSCO Plantec's primary business activity in the Nucor Remand is at odds with Commerce's analysis in the underlying proceeding, but, as Commerce explained in both determinations, its primarily dedicated analysis is fact-specific, and the facts on the two records are different. *See* IDM at 26; Nucor Remand at 63. In the underlying determination, Commerce stated that Nur's primary business activity was not relevant because "there is no question on the record that Nur sold th{e} scrap to Kaptan during

the POR and that Kaptan used that scrap in the manufacturing of subject merchandise" and that "there is no information on the record to show that Nur sells scrap to anyone else besides Kaptan, indicating that this scrap supply is devoted to Kaptan's downstream steel production."  IDM at 26.  These factors were not present in the Nucor Remand, and thus POSCO Plantec's primary business activity was more relevant to Commerce's determination than Nur's was in the underlying determination.  *See* Govt Br. at 15; *compare* IDM at 25-27 *with Nucor Remand* at 29-30, 62-63.  These two determinations are not at odds.

Finally, Kaptan cites *Gujarat Fluorochemicals Limited v. United States*, Slip Op. No. 23-9 (Jan. 24, 2023), but that decision is inapposite.  In *Gujarat*, the Court focused on Commerce's failure to identify a downstream product to which the input at issue was primarily dedicated and with which the input shared a "close physical relationship."  *Gujarat* at 17-19.  While *Gujarat* is not yet final and Commerce has not yet had a chance to address the Court's decision in that proceeding, even under the Court's reasoning in *Gujarat* it is clear that the two cases are distinguishable.  In the underlying determination, Commerce identified the downstream steel product, including subject merchandise, as the "individually-identified product" that Nur's scrap was primarily dedicated to, and further found that Nur's scrap was used by Kaptan to produce subject merchandise.  *See* IDM at 26-27.  Furthermore, the Court in *Gujarat* distinguished its decision from the decision regarding a previous segment of the underlying administrative proceeding:  *Icdas Celik Enerji Tersane ve Ulasim Sanayi A.S. v. United States*, 498 F. Supp. 3d 1345,1363 (2021).  In doing so, the Court in *Gujarat* stated that the Court in *Icdas* "sustained a factual finding that the input supplied by a cross-owned affiliate (scrap) was 'primarily dedicated' to the production of the subject merchandise (steel rebar).  *Icdas*, 498 F. Supp. 3d at 1363."  *Gujarat* at 23.

4

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA MCCARTHY
Director

s/L. Misha Preheim (by Claudia Burke)
L. MISHA PREHEIM
Assistant Director

OF COUNSEL:
W. MITCH PURDY
Attorney
U.S. Department of Commerce
Office of the Chief Counsel for Trade
    Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, DC  20230
Tel: (240) 482-5214
Email: william.purdy@trade.gov


February 8, 2023

s/Sosun Bae
Sosun Bae
Senior Trial Counsel
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-7568
Fax: (202) 305-2062
Email: Sosun.Bae@usdoj.gov

Attorneys for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 8th day of February, 2023, I electronically filed a copy of the foregoing using the CM/ECF system, which sent a notification of such filing to counsel of record.

<u>/s/ Sosun Bae</u>
Sosun Bae